FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2020 MAY 26   AM 9: 21

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

| | |
|---|---|
| **JEFFREY M. FARWELL, Pro Se**<br>Landlord | ) )<br>) |
|      Plaintiff, | ) )<br>) |
| **vs.** | ) )<br>) )<br>) |
| **CITY OF JACKSONVILLE, a Florida**<br>municipal corporation, **KEVIN L. JONES,**<br>individually and **JAMES W. GROFF,**<br>individually, | )<br>)<br>)<br>)<br>) |
|      Defendants, | ) )<br>/ |

CASE NO.: 3:20-cv-523-J-34 PDB

## COMPLAINT AND DEMAND FOR JURY TRIAL

PLAINTIFF Pro Se, **JEFFREY M. FARWELL** files this complaint against the

**CITY OF JACKSONVILLE, KEVIN L. JONES,** individually and **JAMES W.**

**GROFF,** individually, pursuant to 42 U.S.C. §1983, seeking a judgment that Chapters

320 (Building), 656 (Zoning), 420 (Fire) of the City of Jacksonville Code of Ordinances

plus the Life Safety 101 building standards have been unconstitutionally applied against

him in violation of his Fourth and Fourteenth Amendments rights. PLAINTIFF further

alleges substantive due process violations, intentional infliction of emotional distress,

misuse of authority and official misconduct by the individual defendants named herein.

In addition PLAINTIFF alleges against Defendant City a failure to train, supervise and

discipline its employees.  PLAINTIFF demands damages against all Defendants under

state and Federal law for the losses occasioned by the unconstitutional application of the aforementioned Ordinances and building standards against the PLAINTIFF and PLAINTIFF further demands a trial by jury in this matter.

## **JURISDICTION**

1.      This suit is brought pursuant to 42 U.S.C. §1983:

" Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress… "

2.      This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, and under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution.

3.      This court has the authority to secure equitable or other relief for the protection of civil rights under 28 U.S.C. §1343(4).

4.      Thus Court has supplemental jurisdiction over PLAINTIFF's state law claims pursuant to 28 U.S.C. §1367.

5.      This Court may enter an award of attorney's fees and costs pursuant to 42 U.S.C. §1988, if PLAINTIFF's Pro Se status changes to representation by counsel during the course of this action.

6.      This Complaint seeks relief from and compensation for violations of the PLAINTIFF's rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §§1982 and 1988 caused by Defendants, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or

usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the Fourth and Fourteenth Amendments to the Constitution.

7.      There are substantial *bona fide* doubts, disputes and questions that this action seeks to have this Court resolve concerning the Defendants' laws, policies, ordinances, actions and limitations of authority thereof, taken under color and authority of "state" law and procedures, in violation of PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the United States Constitution, as well as under state law.

## VENUE

8.      Venue is proper in the Middle District of Florida, Jacksonville Division, since the laws, policies and actions complained of are those of the City of Jacksonville, Florida, which is a municipal entity within the district and geographical area assigned to the Jacksonville Division.

## PARTIES

9.      At all times material to this Complaint, PLAINTIFF Pro Se, JEFFREY M. FARWELL, was the landlord and person in charge of the property located at 1740 Tracy Road, Jacksonville, Duval County, Florida 32211 ("subject property") against which the Ordinances, actions and policies of Defendant City, and the arbitrary and capricious application thereof by the individual Defendants, was directed. The subject property is located within the municipal boundaries of the City of Jacksonville and the PLAINTIFF is beneficially interested in the relief sought. *See* Exhibit 15, Landlord

10.    At all times material to this Complaint, Defendant CITY OF JACKSONVILLE, (hereinafter "City") is a Florida consolidated municipal corporation, organized and operating under the laws of the State of Florida.

11.    All references to Defendant City are, *inter alia*, understood to include any and all of its departments, agents, officials and employees, and specifically including the City's Municipal Code Compliance Division and the Jacksonville Fire and Rescue Department.

12.    Defendant KEVIN L. JONES is a natural person, *sui juris* (hereinafter "JONES"). JONES was employed by the CITY OF JACKSONVILLE and acted in his official capacity at all times material to this complaint. JONES is also sued in his individual capacity.

13.    Defendant JAMES W. GROFF is a natural person, *sui juris* (hereinafter "GROFF"). GROFF is employed by the CITY OF JACKSONVILLE and acted in his official capacity at all times material to this complaint. JAMES W. GROFF is also sued in his individual capacity.

**COLOR OF STATE LAW**

14.    As a political subdivision of the State of Florida, organized and operating under the laws of the State of Florida, Defendant CITY OF JACKSONVILLE and its agents were, and are, acting under color of state law and authority.

**BACKGROUND FACTS**

15.    PLAINTIFF is the landlord and person in charge of the subject property.

16.    In 1982, PLAINTIFF, along with the property seller, applied for and received an exception from Defendant City to convert the subject property from

residential use to commercial use, specifically a Day Care Center *(see* Exhibit 1, pg 2, ¶6). All necessary permits and permissions for such conversion were obtained and all required property modifications were completed in early 1982, at which time PLAINTIFF opened a day care center. *See* Exhibit 1, Exception E-81-294 (5 pgs) and Exhibit 2, Permit list 1977-1987.

The terms "day care center, daycare center, child care center and childcare center" are all used interchangeably herein with its generally accepted definition being "out-of-home care for children that usually includes an educational component". An "Educational Facility" will frequently also include daycare, extended day and summer camp.

17.     In early 1982, PLAINTIFF opened a properly licensed daycare center on the subject property in compliance with all applicable rules, regulations and standards.

18.     PLAINTIFF's aforementioned daycare center lawfully operated on the subject property from 1982 until 2012 as an educational facility providing childcare, preschool, kindergarten and/or elementary school services during those 30 years.

19.     An example of and confirmation that PLAINTIFF's childcare center lawfully operated on the subject property is evidenced by a September 16, 1994 letter from the Department of Health and Rehabilitative Services (the state licensing agency for childcare centers). Paragraph 2 references (and therefore confirms) the subject property's current childcare license. Paragraph 4 references (and therefore also confirms) the subject property's kindergarten program. Paragraph 5 references a full childcare operation. *See* Exhibit 3, HRS letter dated September 16, 1994 (2 pages).

20.     Defendant City granted (required) an annual Occupational License to operate a nursery and kindergarten, specifically issued to the PLAINTIFF (Jeff Farwell)

and the subject property business (Parkwood Kindergarten and Pre-School). Representative examples of two such City Occupational Licenses are included as exhibits 4 and 5 respectively, to demonstrate and confirm Defendant City, and therefore individual Defendants JONES and GROFF, knew or should have known a child care center historically operated lawfully on the subject property. *See* Exhibit 4, 1994-1995 Occupational License and Exhibit 5, 2003-2004 Occupational License.

21.     On April 3, 1990 the CITY Property Appraiser granted ad valorem tax exemption to the subject property as an educational facility, further demonstrating and confirming Defendant City, and therefore Defendants JONES and GROFF, had information available to them confirming a child care center historically operated lawfully on the subject property *See* Exhibit 6, Property Appraiser Tax Exemption letter dated April 3, 1990

22.     The subject property's zoning was involuntarily changed from Residential RS-7 to Public Facilities PBF-2 by Defendant City on or about 1992, without PLAINTIFF's knowledge, request or consent. PBF-2 zoning is for educational purposes by definition, including daycare, and as such rendered PLAINTIFF's 1982 exception to operate a daycare center unnecessary, as the new zoning classification allowed same by right. A 2009 Defendant City property tax record is included to demonstrate and confirm the subject property was zoned PBF-2 and the land use was "Institutional". Defendant City, and therefore Defendants JONES and GROFF, had knowledge the subject property was not zoned residential when they both made statements to the contrary and also that the subject property was lawfully entitled to be used for educational (institutional)

purposes, as it had been from 1982 through 2012. *See* Exhibit 7, 2009 Property tax record showing PBF-2 zoning and land use as Institutional.

23.    ARLINGTON MIDDLE SCHOOL is immediately to the east of the subject property while PARKWOOD ELEMENTARY SCHOOL is immediately to the west and TERRY PARKER HIGH SCHOOL is one block further west. This two-block area encompassing the subject property provides public and private school services for approximately 2000 students and has done so continuously for more than 40 years.

## DEFENDANT CITY'S HISTORICAL DISREGARD FOR THE RIGHTS OF JACKSONVILLE BUSINESS AND PROPERTY OWNERS

24.    Defendant city has a long and well-documented history of violating the private property rights of its citizens as evidenced by the enactment of a number of ordinances that have been declared unconstitutional. *See, e.g.*, Erznoznick v. City of Jacksonville, 422 U.S. 205, 45 L Ed 2nd 125 (1975); Bayside Enterprises, Inc. v. Carson, 470 F. Supp. 1140 (M.D. Fla. 1979); Lady J. Lingerie, v. City of Jacksonville, 176 F. 3d 1358 (11 th Cir. 1999); Howard v. City of Jacksonville, 109 F. Supp. 2d 1360 (M.D. Fla. 2000); Albanese Enterprises, Inc. v. City of Jacksonville, 3:13-cv-1471-J-34MCR, 2014 WL 585425 (M.D. Fla. 2014).

25.    Defendant City, through the unlawful interpretation and application of ordinances and laws by its employees, resulted in findings from the following State Court judges that said improper application was unconstitutional. *See, e.g.,* State v. Antonio Parise, Case No.: 2007-MO-009964 (Duval County Ct.),    State v. Donald Anderson, Case. No.: 2007-MO-007699) Duval County Ct.), State v. Jennifer M. Harris, Case No.: 2007-MO-009962 (Duval County Ct.), State v. Loriann Black, Case No.: 2007-MO-

007697 (Duval County Ct.), State v. Roger L. White, Case No.: 2007-MO-011480 (Duval County Ct.), State v. Tony Phelps, Case No.: 2007-MO-011481 (Duval County Ct.).

26.    The Defendant City's abuse of individual business and property owners' rights led to two prior Federal civil rights suits in 2008 and again in 2013. *See*, Jacksonville Property Rights Association, Inc v. City of Jacksonville, Case No. 3:08-cv-887-HLA-JRK (M.D. Fla.) and H & J Land Investments, Inc., et. al v. City of Jacksonville, Case No. 3:13-cv-1174-MMH-PDB (M.D. Fla.).

27.    The 2008 litigation involved abuses by the City's Code Compliance Division and was settled when the City agreed to extensive revisions to the substance and procedure process to determine if exigent circumstances existed plus additional due process protections were provided.

Unfortunately, these revisions and additional citizen protections were not incorporated citywide and the Jacksonville Fire Department continued disregarding individual business and property owners' rights, similar to the way the Code Compliance Division had done previously. This continued practice led the 2013 federal litigation against the City of Jacksonville and JONES individually, the same Defendant JONES in the instant case before this Court. *See*, Wacko's Too, Inc v. City of Jacksonville, a Florida municipal corporation, and Kevin L. Jones, individually, Case No. 3:18-cv-74-TJC-MCR (M.D. Fla.).

28.    By necessity, persons wishing to open a business in Jacksonville must first obtain permission to do so from various departments within Defendant City including Zoning, Building and Fire as well as other permissions depending upon the specific business being opened.

Individual City employees, such as Defendants JONES and GROFF, have delegated authority from Defendant City to determine if a business applicant meets the requirements of the City ordinances pertaining to the Jacksonville Fire and Rescue Department to operate.

Such delegated authority empowers City employees, such as Defendant JONES and GROFF, to grant or withhold permission for a business to operate.

This delegated authority is expected to be applied in a fair and even-handed manner to all businesses based on objective standards, but such application is, by definition, a product of subjective interpretation of the individual facts surrounding each business situation by those in authority. Such subjective interpretation of facts, whether intentional or unintentional, can be to the benefit or detriment of each business.

29.    Such potential for an adverse decision by an individual City employee negatively impacting the lawful use of private property is recognized by Defendant City through the creation of the *Building Codes Adjustment Board (BCAB)* pursuant to Chapter 56.103(b) of the Jacksonville Ordinances. The BCAB is more specifically described in ¶40 below. Defendant JONES suggested requesting a hearing before the BCAB as an alternative to complying with his instructions (requirements). *See* Exhibit 8, ¶5.

30.    PLAINTIFF and other similarly affected property owners who feel certain ordinances, laws and other standards have been improperly applied to their properties, are virtually powerless to oppose such application because of the significant legal costs that are necessarily incurred in attempting to defend oneself against the overwhelming power

of the city. PLAINTIFF's Pro Se lawsuit filing status in the instant case before this Court is one of financial necessity.

31.     The City of Jacksonville, through its various ordinances, exercises control over whether a property, and any structures thereon, can be used for commercial business or other purposes. Such ordinances include Chapter 420 (Fire), Chapter 518 (Property Safety) and Chapter 656 (Zoning).   If a building and property is compliant with applicable aforementioned ordinances, there are generally additional licensing requirements which must be met before a business is granted a City occupational license, such as the subject property received in 1982, and annually thereafter. *See* Exhibit 5.

32.     The various City Departments, when certifying compliance with their particular departmental standards, generally do so in an autonomous manner, (i.e. the Building Department does not approve or certify a business is in compliance with Fire Department standards and the Fire Department does not approve or certify a business is in compliance with Building Department standards).   Defendant JONES explains and confirms this fact in his email to PLAINTIFF dated April 28, 2017. An excerpt from this email is included below:

> "We neither enforce nor address Zoning Department issues, Building Department issues, Planning Department issues, and/or Health Department issues. Under state law and city ordinance, we are only authorized to enforce and address Fire Code related issues."
>
> *See* Exhibit 8; JONES email dated 4/28/2017

## INDIVIDUAL DEFENDANTS' COURSE OF CONDUCT IN DENYING

## APPROVAL FOR THE SUBJECT PROPERTY TO BE USED AS IT IS

## LAWFULLY ENTITLED

33.     From on or about January 2017 and continuing through September, 2018, both Defendants GROFF and JONES engaged in an intentional course of conduct delaying, obstructing and denying PLAINTIFF the right to use the subject property as he intended and was lawfully entitled to do. The subject property's historical use as an educational facility and day care center is well documented and spanned a period of over 30 years. Such historical use was well known to Defendant City and such information was readily available to Defendants JONES and GROFF.

34.     In the instant case before this Court, Defendants JONES and GROFF withheld, for a period of 19 months, permission for PLAINTIFF's property to be occupied as a daycare center (its historical use) citing noncompliance with zoning and building standards as their basis for said denial. Not only did this denial exceed their authority in applying standards not related to the Fire Department, but also both individual Defendants willfully overruled, or at least disregarded, the subject property's then current approvals by the Building and Zoning Departments. Both these departments had recently approved, on 1/20/2017 and 1/24/2017 respectively, the subject property to operate a daycare center. *See* Exhibit 14, City Approval Details, Entries 1 and 3.

35.     Each Defendant, individually and/or collectively with the other defendants, caused, and is legally responsible for the incidents, unlawful conduct, injuries and damages alleged by personally participating in the unlawful conduct, or acting jointly or conspiring with others to act, by authorizing or allowing, explicitly or implicitly, policies, plans, customs, practices, or omissions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct, by failing or refusing to initiate and maintain adequate training or supervision, and thus constituting deliberate indifference to

the PLAINTIFF's rights, and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action as further put forth in the claims herein.

36.     In doing the acts and/or omissions alleged, Defendants and each of them, acted under color of authority and/or color of law at all relevant times on behalf of the City of Jacksonville.

37.     PLAINTIFF is informed and believes, and therefore alleges, that the violations of the PLAINTIFF's constitutional rights were caused by the customs, policies, and/or practices authorized by policy makers of Defendant City of Jacksonville, and such actions are well established, well known and constitute a course of conduct that is accepted by all Defendants.

38.     Of particular note is that JFRD employee Johnson, who approves building plans for the department, noted on his approval document referenced in ¶34 above, " Day care to education requires permit and plans" indicating he understood the subject property was already a daycare center (desiring to change to an educational facility). This position is exactly the opposite from Defendant Jones' position before the BCAB in July 2017. *See* Exhibit 14, Certificate Approval Details.

38(a).   In his July 25, 2017 email JONES stated, "If this facility is going to be used for anything other than an Educational Occupancy, it will require a change of use from education to whatever the new proposed use."  This statement indicates he had arbitrarily determined the subject property was exclusively an existing educational facility, not a daycare center, in spite of the 1982 City exception granting it permission to operate as a daycare center and the historical use of the property as such.

38(b).    By applying standards not related to his Fire Department authority, JONES engaged in official misconduct by the overreach of his official authority in denying JFRD approval *based on perceived zoning and building department issues*, not Fire Department ones. This overreach of authority is in direct contravention to his admission of limited lawful authority contained in his April 28, 2017 email referenced in ¶32 above. (*See* Exhibit 8, ¶1).

38(c).    CHIEF JONES knew the limits of his lawful authority, but chose to exceed them when applying Defendant CITY standards to the subject property and disregarding the historical use of same.

38(d).    Such overreach by JONES to apply standards outside his Fire Department authority cannot be accidental and therefore must be intentional and as such constitutes official misconduct.

39.    On January 25, 2017 Fire Inspector Byron Jackson, along with trainee Inspector Ethridge, conducted an inspection of the subject property to determine if all Fire Department requirements had been met for approval of same as a child care center, named Awesome New Beginnings.

This inspection determined an alarm system and exit signs were required before approval could be given. No zoning change or the necessity of a Change of Use permit was mentioned because none was necessary. PLAINTIFF's tenant, Mrs. Tina Phillips, who requested the approval inspection, was referred to in said report as, "… DAYCARE OWNER…" confirming the intended use of the subject property was known to the Fire Department, as of January 25, 2017, as a daycare center not an Educational Facility.

Subsequently, Defendant JONES repeatedly and deliberately miscategorized it as something else. (*See* Exhibit 19, Fire inspection report dated January 25, 2017).

40.     On April 3, 2017 Defendant GROFF incorrectly and improperly determined the subject property had never been inspected and never was a DCF licensed daycare, based on unknown or absent supporting data or facts. He deliberately denied an upgraded fire alarm permit application for the subject property "until they pull a building permit for converting use from single family dwelling to daycare.", a requirement and standard outside of his Fire Department authority. This is in direct opposition to the approvals already granted by the Building and Zoning Departments on 1/20/2017 and 1/24/2017 respectfully and supports PLAINTIFF's allegation that the individual Defendants named in this action routinely exceed their lawful authority and such overreach is a common, established, demonstrable course of conduct that is not only known, but condoned, by Defendant CITY. (*See* Exhibit 9, GROFF email dated 4/3/2017; also Exhibit 14, Approval details for Building, Fire and Zoning dated 1/20/2017 and 1/24/2017).

GROFF's permit denial referenced above indicates an established course of conduct similar to and paralleling the official misconduct exhibited by JONES as set forth in ¶¶38(a)(b) and (c) plus ¶42. Such ongoing and continuing actions indicate an acceptance of same by Defendant CITY.

41.     Defendant JONES incorrectly and improperly determined the subject property had never received authorization for educational and/or daycare occupancy. In his 4/16/2017 email (exhibit 10), Chief JONES stated he used the BID (Building Inspection Division) system to determine that the subject property had never received a

proper change of use from residential. JONES made this determination with the full knowledge of the subject property's history, including exception E-81-294, as provided to him by PLAINTIFF on April 7, 2017, 9 days prior to the email referenced above.

In addition, JONES knew, or should have known, that the subject property was already zoned for commercial use. Exhibit 7 provides a copy of the 2009 Property tax record showing PBF-2 zoning and the existing land use as Institutional. (*See* Exhibit 10, JONES email dated 4/16/2017; Exhibit 12, Farwell email dated 4/6/2017; Exhibit 7, 2009 Property tax record showing PBF-2 zoning and land use as Institutional)

42.    In his April 27, 2017 email (exhibit 11, ¶3) Defendant JONES admits he read the subject property history (exhibit 12) presented to him by PLAINTIFF on April 8, 2017 but stated he did not retain the document because it did not contain fire inspection related information. Such admission confirms JONES had knowledge the subject property was granted City permission to lawfully operate as a daycare center in 1982.

To the contrary, the referenced document JONES discarded did contain relevant information contradictory to his determination referenced above in ¶41, and contained material facts concerning the lawful historical use of the subject property as a child care center. In addition, Florida law prohibits his act of discarding the referenced historical document, which was provided by PLAINTIFF to be included in the JFRD's official record relating to the subject property. To wit: the omission of a material fact in an official record is a third degree felony pursuant to F.S. § 838.022. (*See* Exhibit 11, JONES email dated 4/27/2017, ¶3)

43.    *Building Codes Adjustment Board relief.* If a property owner or prospective business operator feels a City department employee is improperly requiring

compliance with a standard that doesn't pertain to the building approval being sought, a hearing before the Building Code Adjustment Board (BCAB) may be sought for relief in accordance with Chapter 56.103(b), Jacksonville Ordinances. The BCAB has authority to overrule a City department official and vacate the need for the requirement deemed improper by the appellant, if the Board determines such action is warranted.

An explanation of the function of the Building Codes Adjustment Board from Defendant City's website is below:

"The Building Codes Adjustment Board is comprised of nine voting members appointed by Council for staggered three-year terms. Officers include the Chairman, Vice Chairman and Secretary. This Board meets on the second Thursday of each month at 4 p.m.                                                                                                                      …

The Board hears and votes on variances from the Standard Building Code, the Standard Fire Code, the Standard Plumbing Code, the Standard Electrical Code, as well as appeals of citations by the Property Safety Division under Chapter 518 (Property Safety and Maintenance Code), of the city's Municipal Code. A quorum consists of five Board members. The Fire Marshall or his designee, the Chief of the Building and Zoning Inspection Division, as well as a representative(s) from the Property Safety Division are required to attend meetings, but do not vote…"

44.   PLAINTIFF, and his subject property tenant, Mrs. Tina Phillips, filed a variance request before the BCAB to appeal the "new construction classification" Defendant JONES additionally and arbitrarily assigned to the subject property, requiring substantial new standards be met before Fire Department approval would be granted. PLAINTIFF believed sufficient evidence had been provided JONES to prove the subject property was an "existing facility", not "new construction" and sought the Board's help to reverse the arbitrary and capricious determination by Defendants JONES and GROFF. PLAINTIFF's variance hearing request was granted (V-17-36) and a hearing was set for the Board's regularly scheduled June 2017 meeting.

45.     At the June 2017 hearing referenced in ¶44 above, the BCAB delayed a vote by the Board on the variance application until its next regularly scheduled meeting in July. The primary reason given by the Board for the deferral was the complexity of the issues in this case.

46.     At the BCAB's July 2017 meeting, an agreement was brokered by Building Department Chief Tom Goldsbury between JONES and PLAINTIFF's tenant Tina Phillips wherein the "existing" status of the subject property was recognized by the Fire Department (Defendant JONES) and further action by the board to reverse his "new construction" determination was unnecessary.

47.     The day after the hearing and brokered agreement stated in ¶46 above, Defendant JONES denied to PLAINTIFF he had agreed to recognize the "existing" status of the subject property and confirmed he still required "new construction" standards be met before his Fire Department approval for occupancy would be possible. *(See* Exhibit 13, BCAB Order Granting Variance dated 8/10/2017)

48.     PLAINTIFF again brought this matter before the Board and on August 10, 2017 PLAINTIFF received a favorable ruling by the BCAB with respect to Variance V-36-2017 upholding a finding that PLAINTIFF's (subject) property was an existing daycare center, subject to building fire standards for an existing facility as opposed to standards for "new construction" as argued and required by Defendants JONES and GROFF. Of note is the fact that the Building Codes Adjustment Board granted the variance by unanimous vote. *(See* Exhibit 13, BCAB Order Granting Variance dated 8/10/2017)

49.     In the instant case before this court, Defendant JONES continued to withhold permission for PLAINTIFF's property to operate as an existing daycare center, as determined by the BCAB *for an additional year*. Defendant JONES' continued refusal to recognize the "existing" classification of the subject property is in direct contravention to the BCAB's findings as stated in ¶48 above and an arbitrary denial of PLAINTIFF's due process rights by JONES, as well as a misuse of his authority, all under color of law.

50.     PLAINTIFF's due process protection rights afforded by the favorable decision from the BCAB were intentionally violated and effectively vacated when Defendant JONES disregarded the granting of Variance V-36-2017 by the Building Codes Adjustment Board and therefore PLAINTIFF's right to have his subject property treated as existing childcare center.

51.     In further support of PLAINTIFF's position the subject property historically operated as a daycare center, PLAINTIFF received confirmation from Ms Adeline Dobson of the Florida Department of Health that the Department of Children and Families (the licensing agency for daycare centers succeeding HRS) routinely received copies of both the Health and Fire Department inspection reports, verifying not only that the subject property operated as a licensed child care center, but that the Fire Department had received copies of the inspections. (*See* Exhibit 17, Dept. of Health email dated April 21, 2017)

In her official capacity, Ms Dobson had first hand knowledge that the subject property was inspected by the Fire Department since she had personally conducted joint annual inspections of same with Lt. Williams from the JFRD.

52. Defendant JONES' assertion that his department had no documentation of PLAINTIFF's property ever being inspected by the fire department is because his department failed to retain the inspection reports, not because no fire inspections were ever performed. JONES disregarded information provided by PLAINTIFF that Lieutenant Hastings Williams of the Fire Department conducted said inspections, including the initial building approval, in accordance with the subject property's 1982 exception.

53.     On July 29, 2017 PLAINTIFF filed a Citizen Complaint with the Office of Inspector General, City of Jacksonville, against Defendant Captain JAMES W. GROFF concerning the intentional misuse and abuse of his official position by continuing to delay the approval of the subject property for its lawful use as intended by PLAINTIFF.

54.     On September 7, 2017 the Inspector General concluded there was basis for PLAINTIFF's complaint of Official Misconduct against GROFF and said complaint was referred to the City mayor for any further action. (*See* Exhibit 20, Inspector General's email 9/7/2017 and exhibit 21, Inspector General's Letter of Closure)

55.     On or about May, 2017 PLAINTIFF hired architect Jason Canning to draw up the subject property's floor plan to satisfy a specious building requirement demanded by Defendant JONES.

56.     Some two months later, on July 27, 2017 PLAINTIFF received an email from Mr. Canning explaining Defendant GROFF, through a conversation GROFF had with Defendant JONES, was now requiring the subject property to be treated as new construction rather than an existing facility. The architect indicated such a requirement by

Defendant JONES could add $20,000 to $30,000 in additional costs to obtain fire department approval as opposed to his original estimate of $5,000.

57.    Architect Canning referenced that the Building Codes Adjustment Board determined that "new construction" requirements were not necessary for the subject property but that Defendants JONES and GROFF were still requiring same. (*See* Exhibit 18, Architect Canning email dated July 27, 2017)

58.    PLAINTIFF anticipates discovery in this case will confirm and further support PLAINTIFF's position that Defendant JONES, without proper authority, continued to delay PLAINTIFF's lawful use of the subject property well into the following year, through September, 2018.

The information referenced above in ¶¶ 35-56 plus the information contained in Exhibits 1-7, 12-14 and 17-21 was available to Defendants CITY, JONES and GROFF during all times material to this complaint and their disregard of these material facts was deliberate, intentional and with full knowledge their actions were improper.

59.    A Jacksonville Fire and Rescue initial inspection of the subject property for permission to reopen as a childcare center was initiated on January 25, 2017 as evidenced by Exhibit 19. The stated corrections necessary for approval to open were 1): Provide a fire alarm system and 2): Provide exit signage. At that time no mention was made about any of the subsequent GROFF/JONES requirements, such as the need for a change of zoning, change of use permit and meeting new construction standards. (*See* Exhibit 19, Fire Inspection report dated January 25, 2017).

The additional standards created by Defendants JONES and GROFF were done weeks later as these defendants sought to delay or completely block PLAINTIFFs lawful use of his property.

Of special note concerning the Fire Inspection report referenced above is the installation of the exit signs required were the "peel and stick" type and the subject property already contained an approved fire alarm system from when it previously operated.

In addition, PLAINTIFF's tenant had a new fire alarm system on site that the Fire Department refused her permission to install, as set forth in ¶40. In addition, JONES admitted denying permission for PLAINTIFF's tenant to install a new fire alarm system because, "it was determined that the denial was in the interest of protecting the applicant from spending money prematurely;. ...". *Said tenant will testify JONES told her that the subject property "would never be approved" by him.*

> From Defendant JONES' 4/27/2017 email, ¶2: " 2. A meeting was held with the person attempting to utilize this property for educational purposes, and it was explained in that meeting the reason behind the denial to approved (sp) the fire alarm permit. At that meeting, it was determined that the denial was in the interest of protecting the applicant from spending money prematurely; however, the applicant insisted that it was their money to spend so the permit was released for installation..."
>
> (See Exhibit 11, JONES email dated 4/27/2017, ¶2)

September 2018 was the first month PLAINTIFF's tenant was finally granted permission to occupy the subject property and operate same as a child care center, a 19 month delay, from an initial inspection date of January 25, 2017.

60.     PLAINTIFF is informed and believes, and therefore alleges, that the violations of the PLAINTIFF's constitutional rights were caused by the customs, policies, and/or practices authorized and condoned by Defendant City who encouraged,

authorized, directed and/or ratified the unconstitutional and unlawful conduct referenced in this Complaint. These customs, policies and/or practices were the motivation behind the violations alleged, and include, but are not limited to, exposing PLAINTIFF and his property to unreasonable requirements; failing to maintain adequate lawful policies; failing to adequately train, supervise and control City officials and employees; failing to investigate and impose discipline on City officials who employ improper requirements, methods and tactics; failing to adopt proper investigative procedures that determine historical, lawful or other unique uses permitted on a property before allowing the arbitrary and unsupported findings of fact by the individual Defendants herein designed to force PLAINTIFF to comply with unreasonable and unlawful standards.

61.     Defendants JONES and GROFF knowingly exceeded their lawful authority as stated above.  Defendant City also failed to adopt other remedial measures and policies to ensure the private property rights of this PLAINTIFF and other citizen property owners are not violated as set forth in the claims herein. City officials and/or subordinates as used in this Complaint refers to all personnel under the direct or indirect supervision and control of each named defendant.

61(a).   JONES and GROFF, severally, jointly, arbitrarily and capriciously determined that the subject property:

1.   had never been converted from residential use.
2.   was not zoned for commercial use.
3.   was never licensed as a childcare center.
4.   was never inspected by the Fire Department.
5.   was never approved by the City of Jacksonville to operate as a childcare center.
6.   had to perform a costly zoning change from residential to commercial use before approval.

7.   had to perform a costly Change of Use before approval.

8.   had operated illegally, without CITY knowledge, for decades.

9.   had to comply with costly "new construction" standards.

10.  was not an "existing" childcare facility.

11.  was "new" construction.

12.  was wasting money on an upgraded fire alarm system.

61(b).   In addition JONES and GROFF, severally, jointly, arbitrarily and capriciously also:

1.   Ignored PLAINTIFF's 1982 CITY exception, E-81-294 granting his permission to operate a childcare center on the subject property.

2.   Ignored the Building Codes Adjustment Board's favorable ruling on V-17-36 granting "existing" status to the subject property.

3.   Discarded PLAINTIFF's hand delivered copy of the lawful historical use of the subject property.

## DAMAGES AND ATTORNEY'S FEES

62.   PLAINTIFF has suffered damages as a direct result of Defendants' policies and practices and the unconstitutional enforcement of those policies and practices. PLAINTIFF's damages consist of infringement upon PLAINTIFF's constitutional rights as well as monetary losses. The money losses include out-of-pocked expenses for unnecessary and involuntarily building modifications, lost rent, carrying costs and the emotional distress at having to capitulate to unlawful and improper demands arbitrarily created by Defendants JONES and GROFF.

63.   While PLAINTIFF is proceeding as a Pro Se litigant, he anticipates retaining an attorney to represent him at trial and said attorney's fees must be paid by Defendants pursuant to 42 U.S.C. 1988.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF – 42 USC §1983
**Fourth and Fourteenth Amendment Violations**
**Protection Against Unreasonable Searches and Seizures**
By PLAINTIFF against

Defendant CITY of JACKSONVILLE, also Defendants JONES and GROFF in their individual capacities.

64.     PLAINTIFF has a clear legal right to use the subject property in a manner consistent with Exception E-81-294 (*See* exhibit 1) and the current PBF-2 zoning.

65.     As set forth more fully in ¶¶33, 34, 38, 41, 42, 46, 47, 49, 52, 53 and 54 plus further supported by exhibits 8, 10, 11, 13, 14, 19, 20 and 21 Defendant JONES used his official position to unlawfully seize control over PLAINTIFF's use of his property by improperly applying standards and regulations not applicable to said property. By requiring PLAINTIFF to comply with these unlawful standards before Fire Department permission to occupy the property would be granted, JONES effectively prevented PLAINTIFF from using his property as he was lawfully entitled to do. Such denial of use lasted for a period of 19 months and was done under color of law.

66.     As set forth more fully in ¶¶33, 34, 40, 44, 53 and 54 plus supported by exhibits 9, 11, 13, 14 and 18 through 21, Defendant GROFF used his official position to unlawfully seize control over PLAINTIFF's use of the subject property in a manner similar to JONES, thereby preventing PLAINTIFF from using same, as he was lawfully entitled to do, for a period of 19 months. Such seizure and control of the subject property's lawful use was done under color of law.

67.     This is an action for relief pursuant to 28 U.S.C. §2201 as well as an action for award of actual, consequential and exemplary damaged based on the facts presented.

68.     Defendant CITY and all other Defendants, by their conduct and/or failure to act, deprived PLAINTIFF of the right to be secure in his property and free from unreasonable seizure under the Fourth and Fourteenth Amendments of the United States Constitution.

69.     The actions of the Defendants violated clearly established and well-settled federal constitutional rights of the PLAINTIFF.

70.     Defendant GROFF, whether through deliberate misdeed or incompetence, used his official position within the JFRD and as an employee of Defendant CITY to deny PLAINTIFF permission to utilize the subject property as intended and lawfully allowed, as described above in ¶66.

Defendant GROFF also used his official position to arbitrarily misclassify the subject property as zoned for residential use, never converted to commercial use, required to meet "new" construction standards, disregarded its lawful historical use and other misdeeds.

71.     In a manner similar to GROFF as set forth in ¶70 above, Defendant JONES intentionally violated PLAINTIFF's Fourth and Fourteenth Amendment rights by arbitrarily misclassifying the subject property as zoned for residential use, never converted to commercial use, requiring "new" construction standards, disregarding its lawful historical use and other misdeeds as described in ¶65.

72.     Defendant JONES' actions were deliberately conducted without oversight by a neutral decision maker and in conducted in such a manner as to delay PLAINTIFF's intended use of the subject property or to cause him to abandon such intended use altogether.

73.     The costs to PLAINTIFF caused by all defendants in this action delaying the lawful use of the subject property as well as PLAINTIFF being forced to comply with standards created at the sole discretion of Defendant JONES are substantial. Those costs include lost rents plus the out-of-pocket expenses associated with unnecessary and involuntary modifications to the building, including design and permitting fees.

74.     Defendants' misconduct of unlawfully denying, preventing and thereby seizing control over the use of PLAINTIFF's subject property directly and proximately caused PLAINTIFF to suffer damages. The denial of PLAINTIFF's Fourth and Fourteenth Amendment rights, as set forth above in ¶¶64-66, caused said damages which consist of infringement upon his constitutional rights, lost rent and the costs of permitting, construction and professional fees required to obtain fire department approval to open in addition to the time, effort and costs of legal action in the OIG complaint (*see* exhibits 20 and 21), the four BCAB hearings (see exhibit 13) and the instant case before this Honorable Court.

75.     Defendant CITY knew, or should have known, that JONES and GROFF had a demonstrable history of engaging in official misconduct similar to the facts presented in this complaint. The indifference by Defendant CITY to GROFF and JONES' historical and repeated abusive course of conduct against Jacksonville property owners

amounts to condoning such actions by Defendant CITY and demonstrates a complicity in such conduct by allowing same to continue.

75(a).    ¶¶61(a) and (b) plus ¶67 are referenced here as if set down in full.

WHEREFORE, PLAINTIFF prays for the following relief:

A.    That the Court take jurisdiction over the parties and this cause;

B.    That the Court declare that the delaying of permission for PLAINTIFF to utilize his property as he intended and in a manner consistent with its historical use constituted an unlawful seizure of PLAINTIFF's use of his private property by Defendants and such seizure violated PLAINTIFF's Fourth Amendment rights;

C.    That the Court enter a judgment for compensatory damages against all Defendants in favor of PLAINTIFF, to compensate PLAINTIFF for the loss of income and of his ability to lawfully use his property as intended for the 19 month time period beginning in March 2017 and continuing through September, 2018.

D.    That the Court enter a judgment for compensatory damages against all Defendants in favor of PLAINTIFF, to compensate PLAINTIFF for the direct costs he incurred in complying with "new" instead of "existing" and other improper facility standards required by Defendant JONES and GROFF.

E.    That this Court enter a judgment for punitive damages against Defendant KEVIN L. JONES and in favor of PLAINTIFF, to compensate PLAINTIFF for the losses occasioned by Defendant's intentional arbitrary, capricious and unlawful acts;

F.    That this Court enter a judgment for punitive damages against Defendant JAMES W. GROFF in favor of PLAINTIFF, to compensate PLAINTIFF for the losses occasioned by Defendant's intentional arbitrary, capricious and unlawful acts;

G.    That this Court award PLAINTIFF his recoverable costs including reasonable attorney's fees pursuant to 42 U.S.C § 1988, should PLAINTIFF retain an attorney during the course of this action; and

H.    That this Court award PLAINTIFF all other relief in law and in equity to which he may be entitled.

## SECOND CLAIM FOR RELIEF- 42 USC §1983

### Violation of Substantive Due Process Rights – As Applied

### By PLAINTIFF against

Defendant CITY of JACKSONVILLE, also Defendants JONES and GROFF in their individual capacities.

76.    PLAINTIFF realleges the information and facts as set forth in ¶¶64 - 66 and incorporates same into this Count by reference.

77.    Defendant JONES, as stated in his April 16, 2017 email, " Since the facility is not currently open and operating, there was no need to issue a cease and desist order; …" (*See* Exhibit 10, ¶4). By simply denying PLAINTIFF permission to use his subject property as it had been in the past, no due process protections were afforded PLAINTIFF. In effect, JONES acted as judge, jury and executioner over PLAINTIFF's lawful use of his property, and JONES' decisions were final and unreviewable under the facts in this case.

78.    Said statement by JONES referenced in ¶77 above supports PLAINTIFF's position that JONES denied him use of the subject property without due process. Had JONES issued a cease and desist order, PLAINTIFF would have been afforded an

opportunity to defend his use of the property in a legal proceeding, however, JONES admits he can deny use of the property without challenge by simply denying permission for the property to be used as PLAINTIFF intended.

79.    The only venue where PLAINTIFF could have JONES' decision reviewed and possibly overturned was through the Building Codes Adjustment Board, where a petition was filed and ultimately ruled upon in PLAINTIFF's favor. JONES again violated PLAINTIFF's due process rights when he ignored this Board's decision (see exhibit 13) and continued to require "new" construction standards be applied to PLAINTIFF's "existing" facility.

80.    In JONES' July 26, 2017 email he states, " To Captain Groff's point, the agreement that was reached [referenced in ¶46 above] was solely based upon meeting the fire code requirements for an Educational Facility." This position is in direct contradiction to the BCAB's ruling which specifically stated: " 5. That the applicant's interest in this variance is: *To meet requirements necessary to operate a daycare facility*." (*See* exhibit 13, line #5, BCAB approval letter [emphasis added]).

81.    JONES' actions, as referenced in ¶¶77-80 above, further supports PLAINTIFF's position that Defendant JONES not only denied PLAINTIFF his due process rights as guaranteed by the United States Constitution in his lawful use his property as he intended by simply not approving its use, JONES continued to deny PLAINTIFF said use of his property by disregarding the BCAB's favorable ruling to PLAINTIFF.

82.    Defendant JONES arbitrarily and capriciously denied PLAINTIFF use of the subject property based on unsupported and incorrect assumptions made by JONES

himself, which were initially created by, and subsequently supported by, GROFF. In JONES' 4/16/17 email referenced above (¶77) JONES went on to say, " … however, the person seeking to lease the building has been informed that a change of use from a residential occupancy to an educational occupancy must be performed, which includes meeting the applicable requirements for a new educational facility."

83.     JONES was fully aware the subject property was zoned commercial (PBF-2) and not residential at the time he made the above statement (¶82). Said statement *was nine days after PLAINTIFF provided JONES the E-81-294 information* granting a change of use from residential use to a daycare center on February 12, 1982.

84.     JONES ignored the historical use of the property, which information he had in his possession at the time of his above statements, and added the further expensive and unnecessary requirement that a "change of use occupancy" must be performed and the property meet "new construction" standards. Such additional requirements were estimated by PLAINTIFF's architect to add between $20,000 and $30,000 to the cost of compliance in order to gain JFRD approval. (*See* Exhibit 18, Architect email 7/27/2017)

85.     The JONES COU and "new construction" requirements referenced above in ¶77 and ¶82, were still being required by GROFF 102 days later, which was after the BCAB determined that a COU and meeting "new construction" standards would not be necessary. (*See* Exhibit 18; Architect Canning's 7/27/2017 email and Exhibit 13, BCAB approval letter, line #4).

86.     ¶¶61(a) and (b) plus ¶67 is referenced as if set down here in full.

87.     Defendant CITY and all other Defendants, by their actions and/or failure to act, deprived PLAINTIFF of his substantive due process rights guaranteed by the United States Constitution.

88.     The actions of the Defendants violated clearly established and well-settled federal constitutional due process rights afforded the PLAINTIFF, which were denied in the instant case before this Honorable Court.

89.     Defendants' misconduct of unlawfully denying, preventing and thereby seizing control over the use of PLAINTIFF's subject property directly and proximately caused PLAINTIFF to suffer damages. The denial of PLAINTIFF's substantive due process rights, as set forth above in ¶¶64-66, caused said damages which consist of infringement upon his constitutional rights, plus lost rent and the costs of permitting, construction and professional fees required to obtain fire department approval to open in addition to the time, effort and costs of legal action in the OIG complaint (*see* exhibits 20 and 21), the four BCAB hearings (*see* exhibit 13) and the instant case before this Honorable Court.

WHEREFORE, PLAINTIFF prays for the following relief:

A.     That the Court take jurisdiction over the parties and this cause;

B.     That the Court declare that the delaying of permission for PLAINTIFF to utilize his property as he intended was unlawful and the disregarding by all Defendants of the BCAB's favorable ruling with respect to variance V-17-36 violated PLAINTIFF's substantive due process rights;

C.     That the Court enter a judgment for compensatory damages against all Defendants in favor of PLAINTIFF, to compensate PLAINTIFF for the loss of income

and for his inability to lawfully use his property as intended for the 19 month time period beginning in March 2017 and continuing through September, 2018.

      D.    That the Court enter a judgment for compensatory damages against all Defendants in favor of PLAINTIFF, to compensate PLAINTIFF for the direct costs he incurred in complying with "new" instead of "existing" facility standards arbitrarily required by Defendant JONES.

      E.    That this Court enter a judgment for punitive damages against Defendant KEVIN L. JONES in favor of PLAINTIFF, to compensate PLAINTIFF for the losses occasioned by said Defendant's intentional arbitrary, capricious and unlawful acts;

      F.    That this Court enter a judgment for punitive damages against Defendant JAMES W. GROFF in favor of PLAINTIFF, to compensate PLAINTIFF for the losses occasioned by said Defendant's intentional arbitrary, capricious and unlawful acts;

      G.    That this Court award PLAINTIFF his recoverable costs including reasonable attorney's fees pursuant to 42 U.S.C § 1988, should he retain an attorney during the course of this action; and

      H.    That this Court award PLAINTIFF all other relief in law and in equity to which he may be entitled.

### THIRD CLAIM FOR RELIEF

**Negligent Supervision – State Law Claim**

By PLAINTIFF against

Defendant CITY of JACKSONVILLE.

90.     This is an action under Florida law against the CITY OF JACKSONVILLE for the negligent supervision of certain of its employees.

91.     PLAINTIFF realleges the information and facts as set forth in ¶¶64 - 66 and incorporates same into this Count by reference.

92.     This Court has jurisdiction over this state law cause of action because PLAINTIFF's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

93.     At all times material hereto, the CITY OF JACKSONVILLE employed KEVIN L. JONES and JAMES W. GROFF in the Jacksonville Fire and Rescue Department, specifically charged with the enforcement of the City's fire codes, as well as fire prevention, compliance and other duties.

94.     It is believed, and therefore alleged, that Defendant JONES is the Chief of the Jacksonville Fire Prevention Department, a high-ranking employee position within the City of Jacksonville, but he answers to superiors who are charged with supervising his work and ensuring his compliance with the limits of his authority.

95.     It is believed, and therefore alleged, that Defendant GROFF is a Captain in the Jacksonville Fire Prevention Department, a high-ranking employee position within the City of Jacksonville, but he answers to superiors, including JONES, who are charged with supervising his work and ensuring his compliance with the limits of his authority.

96.     The CITY owes a duty to its citizens, and PLAINTIFF in particular, to exercise due care in the supervision of its employees, including JONES and GROFF.

97.     The duty to supervise its employees includes the duty to ensure that they follow basic constitutional requirements, especially when they exercise authority that can

prevent citizens from lawfully utilizing their property as desired  and to exercise such authority, without review, notice, hearing or court decree.   JONES and GROFF repeatedly made significant mistakes of law, judgment and interpretation of basic historical facts regarding the subject property, to the detriment of PLAINTIFF, as previously set forth in this complaint.

98.     Specifically, JONES' superiors are responsible for ensuring he enforces and applies the laws over which he has authority in a fair, impartial and just manner without preferential of differential treatment of any group or class of citizen and without exceeding said authority. In addition, his supervisors are responsible to ensure JONES does not create his own arbitrary regulations and then, under color of law, require compliance with same by any group or class of citizen.

99.     PLAINTIFF alleges the following actions by GROFF rose to the level of obvious negligence, willful misconduct, incompetence or all three and such conduct was allowed to occur by the inaction, indifference, acceptance or lack of supervision by GROFF's superiors:

A.      GROFF's failure to properly investigate the history of the subject property, including the CITY exception E-81-294 granting PLAINTIFF permission to operate a day care center, as set forth more fully in ¶40. *See* Exhibit 1.

B.      GROFF's refusal to approve a JFRD permit for an upgraded fire alarm system,  "until they [*PLAINTIFF or PLAINTIFF's tenant*] pull a building permit for converting use from single family dwelling to daycare."  Such refusal demonstrates a willingness for GROFF to use his official position, invoking a Building Department

requirement (over which he has no authority), to block PLAINTIFF's use of the subject property.

C.    GROFF's requirement that the subject property be treated as if it were a "new construction", as referenced in the architect 's email dated July 27, 2017. Such requirement would add $20,000 to $30,000 additional cost to the subject property. Such additional expense is set down more fully in ¶¶55 through 57 and included herein by reference.

D.    Of special note here is that the architect stated GROFF referenced the "new construction" requirement as coming from JONES, his supervisor, which supports PLAINTIFF's position that such official misconduct was allowed to occur by the inaction, indifference, acceptance or lack of supervision by GROFF's superiors. In this instance, by not only accepting such action by GROFF but by the mandating of such conduct by GROFF's superior.

E.    GROFF's misdeeds and behavior as set forth in ¶¶53,54 and 66 and as stated in the Office of Inspector General complaint mentioned in ¶54, which is included herein in its entirety by reference.

100.    PLAINTIFF alleges the following actions by JONES rose to the level of obvious negligence, willful misconduct, incompetence or all three and such conduct was allowed to occur by the inaction, indifference, acceptance or lack of supervision by JONES' superiors:

A.    JONES' misclassification of the subject property as changing from Educational Occupancy as set forth in ¶38(a).

B.      JONES' actions as set forth in ¶¶38(b), 38(c), 41,42,47,49,50,52,58,61 and 65 are included herein by reference.

C.      ¶¶61(a) and (b) plus ¶67 are referenced as if set down here in full.

101.    The CITY OF JACKSONVILLE knew, or should have known, that GROFF and JONES' behavior as set forth above was occurring, and that his supervisor was complicit in same.

102.    The CITY OF JACKSONVILLE breached the duty of care owed to PLAINTIFF when it failed to properly supervise GROFF and his superior JONES.

103.    Had the CITY OF JACKSONVILLE properly supervised GROFF, JONES and his superiors, PLAINTIFF would not have been denied the lawful use of the subject property as set forth in ¶33 and ¶34.

104.    PLAINTIFF suffered damages as a result of the CITY's negligent supervision of GROFF, JONES and his superiors. Such damages included the loss of income and for his inability to lawfully use his property as intended for the 19 month time period beginning in March 2017 and continuing through September, 2018.

WHEREFORE, PLAINTIFF prays for the following relief:

A.      That the Court take jurisdiction over the parties and this cause;

B.      That the Court declare that the negligent supervision of employees GROFF and JONES by Defendant CITY allowed these employees to unlawfully delay permission for PLAINTIFF to utilize his property as he intended and in a manner consistent with the historical use of same for a period of 19 months.

C.      That the Court enter a judgment for compensatory damages against all Defendants in favor of PLAINTIFF, to compensate PLAINTIFF for the loss of income

and of his inability to lawfully use his property as intended for the 19 month time period beginning in March 2017 and continuing through September, 2018.

        D.      That the Court enter a judgment for compensatory damages against all Defendants in favor of PLAINTIFF, to compensate PLAINTIFF for the direct costs he incurred in complying with "new" instead of "existing" facility standards required by Defendant JONES.

        E.      That this Court enter a judgment for punitive damages against Defendant KEVIN L. JONES and in favor of PLAINTIFF, to compensate PLAINTIFF for the losses occasioned by Defendant's intentional arbitrary, capricious and unlawful acts;

        F.      That this Court enter a judgment for punitive damages against Defendant KEVIN L. JONES and in favor of PLAINTIFF, to compensate PLAINTIFF for the losses occasioned by Defendant's intentional arbitrary, capricious and unlawful acts;

        G.      That this Court award PLAINTIFF his recoverable costs including reasonable attorney's fees pursuant to 42 U.S.C § 1988, should he retain an attorney during the course of this action; and

        H.      That this Court award PLAINTIFF all other relief in law and in equity to which he may be entitled.

## **FOURTH CLAIM FOR RELIEF**

### **Negligent Retention – State Law Claim**

**By PLAINTIFF against**

Defendant CITY of JACKSONVILLE.

105. This is an action under Florida law against the CITY OF JACKSONVILLE for the negligent retention of KEVIN L. JONES and JAMES W. GROFF.

106. PLAINTIFF realleges the information and facts as set forth in ¶¶64 – 66 plus ¶¶97-100 and incorporates same into this Count by reference.

107. This Court has jurisdiction over this state law cause of action because PLAINTIFF's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

108. At all times material hereto, the CITY OF JACKSONVILLE employed KEVIN L. JONES and JAMES W. GROFF in the Jacksonville Fire and Rescue Department, specifically charged with the enforcement of the City's fire codes, as well as fire prevention, compliance and other duties.

109. It is believed, and therefore alleged, that Defendant JONES is the Chief of the Jacksonville Fire Prevention Department, a high-ranking employee position within the City of Jacksonville, but he answers to superiors who are charged with supervising his work and ensuring his compliance with the limits of his authority.

110. It is believed, and therefore alleged, that Defendant GROFF is a Captain in the Jacksonville Fire Prevention Department, a high-ranking employee position within the City of Jacksonville, but he answers to superiors, including JONES, who are charged with supervising his work and ensuring his compliance with the limits of his authority.

111. The CITY owes a duty to its citizens, and PLAINTIFF in particular, to exercise due care in the supervision and retention of its employees, including JONES and GROFF.

112.   The duty to supervise its employees includes the duty to ensure that they follow basic constitutional requirements, especially when the employees referenced in ¶108 are granted authority by Defendant CITY to prevent private citizens from lawfully utilizing their property as it has historically been used, without review, notice, hearing or court decree. JONES and GROFF repeatedly made significant mistakes of law, judgment and interpretation of basic historical facts regarding the subject property, to the detriment of PLAINTIFF.

113.   PLAINTIFF realleges the information and facts as set forth in ¶¶97-100 and incorporates same into this Count by reference.

114.   The CITY OF JACKSONVILLE breached the duty of care owed to PLAINTIFF when it negligently retained GROFF and JONES in positions of authority without properly supervising them to ensure their authority was not being exceeded or their official positions misused to harm PLAINTIFF.

115.   Defendant CITY has previously been sued in this Court on at least three occasions which stem either wholly or in part from the actions of JONES and the Jacksonville Fire Prevention Department. The three cases referenced are set down in ¶26 and ¶27.

116.   Had the CITY OF JACKSONVILLE not negligently retained GROFF and JONES, PLAINTIFF would not have been denied the lawful use of the subject property as set forth in ¶33 and ¶34.

117.   PLAINTIFF suffered damages as a result of the CITY's negligent retention of GROFF and JONES. Such damages included the loss of income and for his

inability to lawfully use his property as intended for the 19 month time period beginning in March 2017 and continuing through September, 2018.

117(a).    ¶¶61(a) and (b) plus ¶67 is referenced here as if set down in full.

WHEREFORE, PLAINTIFF prays for the following relief:

A.      That the Court take jurisdiction over the parties and this cause;

B.      That the Court declare that the retention of JONES and GROFF by Defendant CITY constituted negligence on Defendant CITY's part as the past abusive behaviors demonstrated by JONES and GROFF in arbitrarily applying unlawful standards under color of law were well known;

C.      That the Court enter a judgment for compensatory damages against Defendant CITY in favor of PLAINTIFF, to compensate PLAINTIFF for the loss of income and of his inability to lawfully use his property as intended for the time period beginning in March 2017 and continuing through September, 2018.

D.      That the Court enter a judgment for compensatory damages against all Defendants in favor of PLAINTIFF, to compensate PLAINTIFF for the direct costs he incurred in complying with the arbitrary standards required by Defendants JONES and GROFF.

E.      That this Court award PLAINTIFF his recoverable costs including reasonable attorney's fees pursuant to 42 U.S.C § 1988, should he retain an attorney during the course of this action; and

F.      That this Court award PLAINTIFF all other relief in law and in equity to which he may be entitled.

## FIFTH CLAIM FOR RELIEF

### Official Misconduct and Misuse of Authority–State Law Claim

By PLAINTIFF against

Defendant CITY of JACKSONVILLE, also Defendants JONES and GROFF in their individual capacities.

118.   PLAINTIFF realleges the information and facts as set forth in¶¶61(a) and (b),  ¶¶64 – 72,  ¶75, ¶78 plus ¶¶81-84 and incorporates same into this Count by reference.

119. Absent the lawful authority to do so, Defendants JONES and GROFF required PLAINTIFF to perform a zoning and Change of Use (COU) classification to the subject property as part of their Fire Department approval process. Such unlawful requirements by both individual Defendants represent Official Misconduct and Malicious Misuse of Authority.

120.   Defendants knew or should have known that their conduct as set forth in this complaint violated the Constitutional rights of the PLAINTIFF and was done so with disregard of same. Defendants JONES and GROFF knew their authority did not extend outside the Fire Department, specifically not to authority over Zoning Building Department matters.

121.   Defendants' misconduct of unlawfully denying, preventing and thereby seizing control over the use of PLAINTIFF's subject property directly and proximately caused PLAINTIFF to suffer damages which consist of infringement upon his constitutional rights, lost rent and the costs of permitting, construction and professional fees required to obtain fire department approval to open in addition to the time, effort and

costs of legal action in the OIG complaint (*see* exhibits 20 and 21), the four BCAB hearings (*see* exhibit 13) and the instant case before this Honorable Court.

WHEREFORE, PLAINTIFF prays for the following relief:

A.     That the Court take jurisdiction over the parties and this cause;

B.     That the Court declare that the delaying of permission for PLAINTIFF to utilize his property as he intended was Official Misconduct and Malicious Misuse of Authority.

C.     That the Court enter a judgment for compensatory damages against all Defendants in favor of PLAINTIFF, to compensate PLAINTIFF for the loss of income and for his inability to lawfully use his property as intended for the time period beginning in March 2017 and continuing through September, 2018.

D.     That the Court enter a judgment for compensatory damages against all Defendants in favor of PLAINTIFF, to compensate PLAINTIFF for the direct costs he incurred in complying with "new" instead of "existing" facility standards arbitrarily required by Defendant JONES.

E.     That this Court enter a judgment for punitive damages against Defendant KEVIN L. JONES in favor of PLAINTIFF, to compensate PLAINTIFF for the losses occasioned by said Defendant's intentional arbitrary, capricious and unlawful acts;

F.     That this Court enter a judgment for punitive damages against Defendant JAMES W. GROFF in favor of PLAINTIFF, to compensate PLAINTIFF for the losses occasioned by said Defendant's intentional arbitrary, capricious and unlawful acts;

G.      That this Court award PLAINTIFF his recoverable costs including reasonable attorney's fees pursuant to 42 U.S.C § 1988, should he retain an attorney during the course of this action; and

H.      That this Court award PLAINTIFF all other relief in law and in equity to which he may be entitled.


## SIXTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress – State Law Claim

By PLAINTIFF against

Defendant CITY of JACKSONVILLE, also Defendants JONES and GROFF in their individual capacities.

122.    PLAINTIFF realleges the information and facts as set forth in ¶¶61(a) and (b), ¶¶64 – 72, ¶75, ¶78 plus ¶¶81-84 and incorporates same into this Count by reference.

123. Absent the lawful authority to do so, Defendants JONES and GROFF required PLAINTIFF to perform a zoning and Change of Use (COU) reclassification to the subject property as part of their Fire Department approval process. Such unlawful requirements by both individual Defendants effectively prevented PLAINTIFF from using the subject property as he intended for a period of 19 months.

124.    The conduct as set forth in this complaint by both individual Defendants represents an intentional disregard for the Constitutional Rights of the PLAINTIFF and, at a minimum, negligent infliction of emotional distress. The bold, arbitrary and deliberate manner in which the delay of PLAINTIFF's use of his property was applied by

JONES and GROFF was deliberate and rises to intentional inflection of emotional distress.

125.    Defendants knew or should have known that their conduct as set forth in this complaint violated the Constitutional rights of the PLAINTIFF and was done so with disregard of same. Defendants JONES and GROFF knew their authority did not extend outside the Fire Department but nevertheless required PLAINTIFF to comply with Zoning and Building Department standards before their Fire Department approval would be granted.

126.    Defendants JONES and GROFF acted intentionally or recklessly and knew or should have known that emotional distress would likely result to PLAINTIFF as a result of their actions to prevent him from using his property as intended. PLAINTIFF was effectively forced to comply with whatever standards the above named Defendants deemed appropriate without regard to PLAINTIFF's lawful right to use his property.

127.    Defendants knew or should have known that their conduct violated the Constitutional rights of the PLAINTIFF.

128.    Defendants' acts were done with malicious and oppressive intent as set out in this complaint.

129.    Defendants' conduct caused emotional distress to PLAINTIFF including outrage, humiliation, anger and worry.

WHEREFORE, PLAINTIFF prays for the following relief:

A.    That the Court take jurisdiction over the parties and this cause;

B.      That the Court declare that the delaying of permission for PLAINTIFF to utilize his property as he intended was deliberate and caused Emotional Distress upon PLAINTIFF.

C.      That the Court enter a judgment for compensatory damages against all Defendants in favor of PLAINTIFF, to compensate PLAINTIFF for the emotional distress caused by his inability to lawfully use his property as intended for the time period beginning in March 2017 and continuing through September, 2018.

D.      That this Court enter a judgment for punitive damages against Defendant KEVIN L. JONES in favor of PLAINTIFF, to compensate PLAINTIFF for the losses occasioned by said Defendant's intentional arbitrary, capricious and unlawful acts;

E.      That this Court enter a judgment for punitive damages against Defendant JAMES W. GROFF in favor of PLAINTIFF, to compensate PLAINTIFF for the losses occasioned by said Defendant's intentional arbitrary, capricious and unlawful acts;

F.      That this Court award PLAINTIFF his recoverable costs including reasonable attorney's fees pursuant to 42 U.S.C § 1988, should he retain an attorney during the course of this action; and

G.      That this Court award PLAINTIFF all other relief in law and in equity to which he may be entitled.

## JURY DEMAND

PLAINTIFF, JEFFREY M. FARWELL, demands a trial by jury of all issues so triable pursuant to rule 38 of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing statements of fact are true and correct.

_MAY  26, 2020_
Date

/s/ Jeffrey M. Farwell
Jeffrey M. Farwell, PLAINTIFF Pro Se
5320 Floral Bluff Ct.
Jacksonville, Fl. 32211
904-208-1277
jefffarwell@comcast.net

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _26th_ day of May,  2020 a true and correct copy of the foregoing was served via email to JASON R. TEAL, Esquire, Jacksonville Office of General Counsel at jteal@coj.net

/s/ Jeffrey M. Farwell
Jeffrey M. Farwell, PLAINTIFF Pro Se