## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JEFFREY M. FARWELL,

       Plaintiff,

                               Case No. 3:20-cv-523-MMH-PDB

vs.

CITY OF JACKSONVILLE, KEVIN L. JONES, and JAMES W. GROFF,

       Defendants.

_____/

# O R D E R

**THIS CAUSE** comes before the Court on Defendants' motion to dismiss filed on July 16, 2020.  See Defendants' Motion to Dismiss Amended Complaint (Doc. 12; Motion).  Plaintiff Jeffrey M. Farwell, proceeding pro se, filed a response in opposition to the Motion on July 27, 2020.  See Plaintiff's Opposition to Defendants' Motion to Dismiss Amended Complaint (Doc. 15; Response). Accordingly, the matter is ripe for review.

## I.    Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir.

2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).  Nonetheless, the plaintiff must still meet some minimal pleading requirements.  Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]"

2

which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).  The Court's consideration is limited to those facts contained in the complaint and the attached exhibits.  Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007).  Under Rule 10(c), Federal Rules of Civil Procedure (Rule(s)), "attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985); see also Rule 10(C) (providing that the exhibits are part of the pleading "for all purposes").  Additionally, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Griffin Indus., 496 F.3d at 1206.

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.  Moreover, when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Id.  And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th

Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[1] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706); see also Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014).

## II.   Background[2]

In the instant action, Farwell alleges that Defendants intentionally made misrepresentations and incorrect determinations that his property failed to comply with certain provisions of the City of Jacksonville's Code of Ordinances, improperly imposed additional requirements on his property, and falsely asserted that Farwell needed and failed to obtain a change of use permit. See generally Amended Complaint and Demand For Jury Trial (Doc. 10; Amended Complaint). Farwell maintains that as a result of these actions he suffered a

---

[1]    "Although an unpublished opinion is not binding. . ., it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[2]    In considering the Motion, the Court must accept all factual allegations in Farwell's complaint as true, consider the allegations in the light most favorable to Farwell, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint, and may well differ from those that ultimately can be proved.

substantial delay in receiving approval for his property to be used for its intended purpose as a daycare center.  Id.

Farwell has been the landlord and "person in charge" of a piece of real property located at 1740 Tracy Road, Jacksonville, Florida 32211 (the "Property").  Id. at 3.  In 1982, he obtained "all necessary permits and permissions" to operate a daycare center at the Property.  See id. at 5, Ex. 1 (Jacksonville Planning Commission Order).  That same year, he opened his "properly licensed" daycare center "providing childcare, preschool, kindergarten, and/or elementary school services" and continued to operate the center through 2012.  Id. at 5.  Farwell attaches various documents to the Amended Complaint in support of his contention that the daycare center was lawfully operated on the Property including city occupational licenses, various tax records, and a letter from the Department of Health and Rehabilitative Services.  See id., Exs. 1, 3-8.

Having not operated the facility as an educational facility or daycare center since 2013, in April of 2017 Farwell began the process of leasing the Property to a third party to operate a daycare center.  Id., Ex. 10 (Jones' April 16, 2017 Email).  Farwell maintains that despite having information that the Property did in fact conform with state and local laws and regulations, Defendants found that the Property was never properly converted, zoned, licensed, inspected, or otherwise approved for use as a daycare center.  Id. at 6.

Farwell sought relief from the Building Codes Adjustment Board (BCAB), the entity to which he asserts property owners can appeal adverse decisions stemming from enforcement of local building, zoning, and fire codes and ordinances. Id. at 9. According to Farwell, he appeared before the BCAB on numerous occasions and Defendant James W. Groff was also present. See id. at 9-12. Farwell alleges that he initially withdrew his request for a hearing before the BCAB in July 2017, based on Defendant Kevin L. Jones' agreement that a change of use permit was unnecessary and that the Property was in fact an existing daycare center that was properly converted from residential to commercial use. Id. at 10. Farwell contends that despite reaching this agreement, Jones later denied making these concessions and rescinded any such agreement. Id.

Farwell again sought relief from the BCAB in August 2017. Id. at 10-11. At this hearing, the BCAB unanimously approved Farwell's variance petition. Id. at 11. However, just four days later, Farwell contends Jones "personally vacated the Board's findings by falsely claiming the Board has not approved 'childcare'" as a permitted use of the Property. Id. at 11. Farwell alleges that Jones continued to impose demands on Farwell that the BCAB had deemed unnecessary forcing Farwell to request yet another hearing in September 2017. Id. At this hearing, the BCAB clarified that the Property was an existing daycare that did not require a change of use permit and declined to address the

matter further.  Id.   Farwell alleges that as a result of the individual Defendants' intentional misconduct and Defendant City's unconstitutional policies and practices, he suffered significant monetary losses as well as emotional distress.  Id. at 13.

On May 26, 2020, Farwell initiated this action, pro se, by filing a six-count Complaint and Demand for Jury Trial (Doc. 1; Initial Complaint) against Defendants the City of Jacksonville, Kevin L. Jones, and James W. Groff.  In the Initial Complaint Farwell alleged a variety of claims including two federal claims under 42 U.S.C. § 1983 ("§ 1983").  See generally Initial Complaint.  The City of Jacksonville filed a motion to dismiss on June 19, 2020, and Defendants Groff and Jones filed a motion to dismiss on June 29, 2020.  See City of Jacksonville's Motion to Dismiss (Doc. 8) and Defendants Jones and Groff's Motion to Dismiss (Doc. 9), (collectively, "Motions to Dismiss").  Farwell did not respond to the Motions to Dismiss, and instead, on July 2, 2020, he filed the Amended Complaint which is the operative pleading in this action.

In Counts I and II of the Amended Complaint, Farwell asserts federal claims under § 1983 against all Defendants based upon alleged violations of his constitutional right to be free from unreasonable search and seizures as well as his constitutional right to substantive due process.  See Amended Complaint at 14, 21.  In Counts III and IV, Farwell raises state law claims against the City of Jacksonville, specifically bringing causes of action for negligent supervision and

7

negligent retention.  Id. at 22, 24.  Last, in Counts V and VI, Farwell asserts state law claims against all Defendants for official misconduct and misuse of authority and negligent infliction of emotional distress.  Id. at 25, 27.  Farwell's filing of the Amended Complaint rendered Defendants' Motions to Dismiss moot, and the Court entered an order declaring them as such on July 7, 2020.  See Order (Doc. 11).  On July 16, 2020, Defendants filed the instant Motion seeking dismissal of the Amended Complaint in its entirety.  See generally Motion.

## III.   Summary of the Arguments

In support of their Motion, Defendants argue that Farwell has failed to "(1) state a § 1983 claim under the Fourth Amendment; (2) state a violation of substantive due process, (3) allege Monell[3] liability against the City; and (4) plead viable negligence claims."  Motion at 3.  In addition, Defendants argue that Jones and Groff are entitled to qualified immunity as well as state sovereign immunity.  See id.  Specifically, as to Farwell's § 1983 unreasonable seizure claim under the Fourth Amendment, Defendants contend that there was no "meaningful interference" with Farwell's property to constitute a seizure.[4]

---

[3]   Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978) (holding that a government entity is liable under § 1983 for an official's constitutional violation only if the violation was based on the government entity's policy, the actions of the official can be fairly deemed to represent government policy, or if the violation was the result of a custom or practice permitting such violation).

[4]   Defendants also assert that Farwell has failed to state a claim for an unreasonable search because he had no expectation of privacy where he invited the search for purposes of

Id. at 5-6.  As to Count II, Farwell's § 1983 claim for a violation of his substantive due process rights, Defendants argue that Farwell improperly seeks relief for violation of his state-created property rights rather than a violation of his federal constitutional rights.  See id. at 7-10.  As an alternative basis for dismissal of the § 1983 claims against the City of Jacksonville, Defendants argue that Farwell has failed to sufficiently allege § 1983 claims against a municipality because Farwell has not "identif[ied] with factual specificity any municipal custom, policy or practice" that caused any alleged violation of Farwell's constitutional rights.  See id. at 10-12.  Similarly, the individual Defendants Jones and Groff argue that even if Farwell states plausible § 1983 claims against them, they are entitled to qualified immunity because there are no allegations that either defendant "took action outside the scope of his discretionary authority resulting in a constitutional violation."  Id. at 17.  As to the state law claims in Counts III, IV, and VI of the Amended Complaint, Defendants argue that Jones and Groff are entitled to sovereign immunity.  See id. at 13-15.  Defendants also maintain that the claims for "Official Misconduct and Misuse of Authority" do not exist under Florida law.  See id. at 14.

In his Response, Farwell addresses each of Defendants arguments in turn.  See generally Response.  As to his § 1983 claim under the Fourth Amendment,

---

seeking a permit.  Id. at 6.  Defendants may have been overly cautious by raising an argument regarding an unreasonable search, as no such claim is alleged in the Amended Complaint. Thus, the Court need not address the argument.

Farwell argues that Defendants' actions amounted to a constructive seizure of the Property because Defendants prevented its use for its only "allowable purposes." Id. at 4. Regarding his substantive due process claim under § 1983, Farwell makes narrow and specific distinctions between the cases cited by Defendants and the present case and generally points out that "none of those references cited deal with a city official ignoring a superior Governmental Board's ruling." See id. at 6-9. As to the question of municipal liability, Farwell contends that he has sufficiently plead facts that show the City of Jacksonville has a custom, policy, or practice of violating citizen's constitutional rights and relies on prior cases filed against the City and specifically involving Defendant Jones. See id. at 11-13. Last, with regards to his federal claims, Farwell argues that Defendants Jones and Groff are not entitled to sovereign immunity or qualified immunity because they were acting "outside their lawful authority." See id. at 13-15.

## IV. Discussion

### A. Count I: Unreasonable Search and Seizure

"[S]ection 1983 provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law." Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 n.12 (11th Cir. 2010) (citation omitted); see 42 U.S.C. § 1983. To state a claim for relief under § 1983,

a plaintiff must sufficiently allege that he or she was "'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" See Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003) (quotation omitted). "The Fourth Amendment, made applicable to the States by the Fourteenth, provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated[.]'" Soldal v. Cook Cnty., 506 U.S. 56, 61 (1992) (internal citation omitted). Property is seized within the meaning of the Fourth Amendment when "there is some meaningful interference with an individual's possessory interest in that property." Id. (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).

The Court first observes the paucity of authority addressing the contours of property seizure claims in a civil context under the Fourth Amendment. See Costas-Elena v. Mun. of San Juan, 714 F. Supp. 2d 263, 270 (D.P.R. 2010)  In considering such a claim, the Costas-Elena's court noted that "the First Circuit has not dealt directly with the reasonableness of a property seizure in a civil context like the one before us – the dearth of such claims is but one indicator of how ill-suited the Fourth Amendment is to the situation at bar." Id.  That court ultimately did not determine whether the interference alleged – temporary blockage of access to a portion of plaintiffs' land by debris from city tree

trimming work – amounted to a seizure for purposes of stating a Fourth Amendment claim because it concluded that any such "seizure was reasonable." Id.  Thus, even if it was a seizure, it was not in violation of the Fourth Amendment.  Nevertheless, the Costa-Elena's court's discussion of the facts in cases where courts did find that an interference with property rights constituted a seizure highlights the significant nature of interference necessary for it to be "meaningful" such that it amounts to a Fourth Amendment seizure.  Id.  Indeed, as that court noted "the few cases [that court found] analyzing premises seizures in a civil context" involved interference with "possessory interests far greater" than the limited interference with possessory property rights complained of by the plaintiffs.  See id.  And this Court similarly finds the interference with possessory property rights in those cases is "far greater" than the limited interference with Farwell's possessory property rights alleged here.

The Costa-Elena's court first cited Presley v. City of Charlottesville, 464 F.3d 480, 487 (4th Cir. 2006), in which the Fourth Circuit Court of Appeals examined a mistake in a map produced by the government that resulted in members of the public regularly hiking across plaintiff's yard.  The plaintiff alleged she was deprived of the use of her property "due to the regular presence of a veritable army of trespassers who freely and regularly traverse[d] her yard, littering, making noise, damaging her land, and occasionally even camping overnight."  Id.  The court held that such a "constant physical occupation

certainly" amounted to a seizure.  See id.  The Costa-Elena's court also cited a decision in which the Fifth Circuit Court of Appeals found a "meaningful interference" because the city destroyed a private property owner's buildings. Freeman v. City of Dallas, 242 F.3d 642, 658 (5th Cir. 2001); see also Philly Auto, Inc. v. City of Philadelphia, 362 F. Supp. 3d 272, 279 (E.D. Pa. 2019) (City's demolition of property after a fire constituted a seizure under the Fourth Amendment).  In another case identified by this Court, a district court found a "meaningful interference" sufficient to constitute a seizure had occurred where the government asserted dominion or control by placing a tax lien on the property such that it effectively amounted to taking constructive possession of the property.  See Andrews v. Crump, 984 F. Supp. 393, 410 (W.D.N.C. Oct. 16, 1996).

Certainly, these cases recognize that an individual need not be completely or physically deprived of their possessory interests in order to establish a meaningful interference that rises to the level of a seizure of real property under the Fourth Amendment.  However, the relevant authority plainly suggests that the interference must be substantially more meaningful than that alleged by Farwell.  In contrast to the significant interference found to constitute a seizure in the cases described above, where a plaintiff has alleged interference similar to that identified by Farwell, courts have found the interference not to be sufficiently meaningful to rise to the level of a Fourth Amendment seizure.  For

example in <u>Marcavage v. Borough of Lansdowne, Pa.</u>, a district court found no meaningful interference for Fourth Amendment purposes where the defendant code enforcement officer notified the plaintiff that he would be violating an ordinance if he continued to operate his rental properties without a rental license.  <u>See</u> 826 F.Supp.2d 732, 747 (E.D. Pa. 2011), <u>aff'd</u> 493 F. App'x 301 (3d Cir. 2012).  The court noted that a seizure of property could occur for example if a person was <u>evicted</u> as a means to ensure compliance with regulations, but merely informing a property owner that it would be unlawful for him to use his property as he intends until he meets existing requirements does not constitute a seizure of property.  <u>See</u> <u>id.</u> at 745.  The district court in <u>Enclave Arlington Assocs. Ltd. P'ship v. City of Arlington, Tex.</u>, reached a similar conclusion noting that the plaintiff identified no authority supporting a finding that the mere 'interference with the "use and enjoyment" of property amounted to a "meaningful interference with possessory interests."  669 F. Supp. 2d 735, 742 (N.D. Tex. 2009).  In <u>Enclave</u>, the court acknowledged that the defendant city's traffic management plan for stadium events was "disruptive or inconvenient" to the nearby owner of a 348-unit apartment complex, nevertheless this disruption was not sufficient to constitute a Fourth Amendment seizure.  <u>See</u> <u>id.</u>  Another court has found that a plaintiff failed to allege a meaningful interference with possessory property rights where the plaintiff sought to stop a utility from entering onto its property to conduct a property survey.  <u>See</u> <u>Klemic v. Dominion</u>

14

Transmission, Inc., 138 F. Supp. 3d 673, 696 (W.D. Va. 2015).  And in Nikolas v. City of Omaha, the Eighth Circuit Court of Appeals found that city code inspector's placarding garages as unfit for occupancy bore "no resemblance to the condemnation and physical destruction of buildings" found to be sufficient to support a Fourth Amendment seizure claim in other cases.  See 605 F.3d 539, 547 (8th Cir. 2010).

The Court finds the Eleventh Circuit's decision in Foley v. Orange Cnty. instructive as to the sufficiency of Farwell's Fourth Amendment seizure claim. See 638 F. App'x 941, 945 (11th Cir. 2016).   In Foley, county officials investigated a citizen complaint that the plaintiffs had "accessory buildings on their property without the necessary permits." Id. at 942.  The plaintiffs sought a determination regarding whether the applicable ordinance was interpreted properly from the county zoning manager. Id. at 945.  After several appeals at the local and state level, the county affirmed the decision that the ordinance required plaintiffs to obtain permits for their accessory buildings.  Id.  The plaintiffs then filed an action in federal court. Id.  Among other claims, plaintiffs asserted a claim under § 1983 arguing that by upholding the zoning manager's interpretation of the ordinance the county violated their constitutional right to be free from an unreasonable search and seizure.  See id. at 945. The Eleventh Circuit rejected that contention, holding that a "voluntary request for a determination from the zoning manager, subsequent fees paid to appeal that

decision, and a potential application for a special exception . . . plainly [did] not amount to a seizure under the Fourth Amendment." Id.  Not only did the court find that the allegations failed to state a plausible claim for relief, the court went so far as to find that the plaintiffs' federal unreasonable search and seizure claim, had "no plausible foundation" such that the allegations were not even sufficient to invoke the federal-question jurisdiction of the court. Id. at 945-46.

Here, similar to Foley, Farwell alleges that a seizure of his Property occurred when Defendants required him to obtain a change of use permit before the Property could be used as a daycare center. See Response at 15.  Farwell's voluntary request to use the Property as a daycare center, his subsequent appeals, and petition for an exemption and delay in his ability to use the Property as desired – whether viewed independently or combined – do not amount to a seizure under the Fourth Amendment.  The Court finds no authority to support a conclusion that requiring a property owner to meet building, zoning, or fire codes before the property can be voluntarily used as desired by the owner amounts to a "meaningful interference" with a person's "possessory interests" such that it would constitute a seizure of constitutional proportions.  Importantly, Defendants did not evict Farwell or constructively deprive him of possession of the Property, nor did they permit the Property to be damaged or physically occupied.  In the Amended Complaint and its attachments, Farwell merely alleges that Defendants took administrative

actions to impose permit requirements and enforce compliance with fire codes before a daycare center could begin operations.  Although Farwell disagrees with Defendants interpretation of the relevant ordinances, accepting the allegations of the Amended Complaint as true, the Court finds that Farwell has not described a seizure under the Fourth Amendment.  Accordingly, he has faied to state a claim for a Fourth Amendment violation, and Count I of Farwell's Amended Complaint is due to be dismissed.

### B. Count II: Substantive Due Process

In their Motion, Defendants maintain that Farwell's substantive due process claim should be dismissed because the facts he alleges in the Amended Complaint concern state-law created property rights, not rights created by the Constitution.  See Motion at 9-10.  The Court agrees.  The Eleventh Circuit has instructed

> The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.' Fundamental rights are those rights created by the Constitution.  Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.

Greenbriar Vill., L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003) (internal citations and quotations omitted).  The basis of Farwell's substantive due process claim is an interference with his state-created property rights by the imposition of "new construction" and "change of use" requirements

that Farwell alleges had been determined to be unnecessary.   Amended Complaint at 11.  Because Farwell's claim is based on his state-created property right in operating the Property as a daycare center and not a right arising from the United States Constitution, he presents no viable substantive due process claim.

Further, enforcement of a zoning ordinance constitutes an executive act, "which is not subject to substantive due process protections." Foley, 638 F. App'x at 945 (citing DeKalb Stone, Inc. v. Cnty. of DeKalb, 106 F.3d 956, 959-60 (11th Cir. 1997)); see also Bee's Auto, Inc. v. City of Clermont, 927 F. Supp. 2d 1318, 1333 (M.D. Fla. 2013) (City's enforcement of existing zoning regulations and "Conditional Use Permit" process were executive actions not subject to a substantive due process claim).  As such, in Count II of the Amended Complaint Farwell has failed to allege facts stating a plausible substantive due process claim. Count II of his Amended Complaint is due to be dismissed.

### C. Counts III – VI: State Law Claims

Having determined that Farwell's claims under § 1983 are due to be dismissed, the Court next considers whether to continue to exercise supplemental jurisdiction over the remaining state law claims.  In Counts III through VI of the Amended Complaint, Farwell asserts claims for relief under Florida state law.  See Amended Complaint at 22-30.  "The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion

of the district court." <u>Raney v. Allstate Ins. Co.</u>, 370 F.3d 1086, 1088-89 (11th

Cir. 2004).  Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise

jurisdiction over a state claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Notably, "[a]ny one of the section 1367(c) factors is

sufficient to give the district court discretion to dismiss a case's supplemental

state law claims." <u>Parker v. Scrap Metal Processors, Inc.</u>, 468 F.3d 733, 743

(11th Cir. 2006).  However, upon determining that it has the discretion under §

1367(c) to decline jurisdiction, "[a district court] should consider the traditional

rationales for pendent jurisdiction, including judicial economy and convenience

in deciding whether or not to exercise that jurisdiction." <u>Palmer v. Hosp. Auth.</u>

<u>of Randolph Cnty.</u>, 22 F.3d 1559, 1569 (11th Cir. 1994).  Upon due consideration,

the Court finds that judicial economy and convenience would not be served by

retaining jurisdiction over Farwell's state law claims.  Thus, the Court declines

to exercise supplemental jurisdiction over these claims.

For the reasons set forth above, the Court has determined that the federal claims in Counts I and II of the Amended Complaint, over which the Court has original jurisdiction, are due to be dismissed.  What remains are uniquely state law claims that are best addressed by the state courts.  This case has not been pending for an extended period of time, and Farwell's time in federal court has not moved beyond determining whether his Amended Complaint states a federal claim upon which relief can be granted.  The Court has not issued any dispositive rulings pertaining to the state law claims, and the discovery deadline has not yet passed.  See Order (Doc. 17).  Thus, the procedural posture of the case weighs in favor of declining jurisdiction to allow the case to proceed fully in state court.  Moreover, when, as here, the federal claims are dismissed prior to trial, the Eleventh Circuit Court of Appeals has "encouraged district courts to dismiss any remaining state claims."  Raney, 370 F.3d at 1089; Busse v. Lee Cnty., 317 F. App'x 968, 973-74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [Appellant's] state law claims.  28 U.S.C. § 1367(c)(3).  Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial.").  See also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine- judicial economy, convenience, fairness, and comity- will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Upon consideration of the § 1367 factors and the "traditional rationales for pendent jurisdiction, including judicial economy and convenience," see Palmer, 22 F.3d at 1569, the Court declines to exercise supplemental jurisdiction over Farwell's remaining state law claims.  Accordingly, Counts III through VI of the Amended Complaint are due to be dismissed without prejudice to Farwell refiling these claims in the appropriate state court.[5]

In light of the foregoing, it is

**ORDERED:**

1. Defendants' Motion to Dismiss Amended Complaint (Doc. 12) is **GRANTED** to the extent set forth below.

2. Counts I and II of Plaintiff's Amended Complaint are **DISMISSED**.

---

[5]    The Court notes that Farwell will suffer no harm from the Court's decision to decline supplemental jurisdiction because federal law provides for the tolling of the state limitations period while a state claim is pending in federal court.  Specifically, 28 U.S.C. § 1367(d) provides that:

> [t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

As such, even if the statute of limitations has otherwise run on Farwell's state law claims, Farwell has at least thirty days to refile his claims in state court.  See Dukes v. Georgia, 212 F. App'x 916, 917-18 (11th Cir. 2006); Dusek v. JPMorgan Chase & Co., 132 F. Supp. 3d 1330, 1354 n.18 (M.D. Fla. 2015).

3. Counts III - VI of Plaintiff's Amended Complaint are **DISMISSED, without prejudice** to refiling in the appropriate state court.  As set forth in 28 U.S.C. § 1367(d), the period of limitations for this claim is tolled "for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

4. The Clerk of the Court is **directed** to enter Judgment in favor of Defendants City of Jacksonville, Kevin L. Jones, and James W. Groff on Counts I and II of the Amended Complaint.

5. The Clerk of the Court is further **directed** to terminate all pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 11th day of March, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

lc28

Copies to:

Counsel of Record
Pro Se Parties